Hillsborough,
July 6, 1950. } No. 3900.

WILLIAM G. COLBURN *v.* LUCIEN J. NORMAND.

*Sheehan, Phinney & Bass* (*Mr. Phinney* orally), for the plaintiff.

*Devine & Millimet* and *David Maclay* (*Mr. Maclay* orally), for the defendant.

DUNCAN, J. The plaintiff, who was seventy years of age when the accident occurred, had resided on the easterly side of the Daniel Webster Highway in Bedford for about twenty-eight years. He was employed at a skating rink diagonally across the highway from his

home, and when injured was going to work at about 7 P. M. The defendant, operating a 1936 Plymouth coupe, was on his way to Worcester, Massachusetts, and entered the highway from South Main Street, Manchester, about three hundred feet north of where the plaintiff undertook to cross. South Main Street enters the Daniel Webster Highway on a southerly course approximately in line with the highway south of the intersection. The highway north of the intersection curves rather sharply toward the east.

The plaintiff entered the highway from his driveway. Before doing so he waited for two vehicles, described by him as trucks, to go by toward the north. The defendant testified that two vehicles passed South Main Street before he entered the main highway. The plaintiff testified that when the trucks were some two hundred feet beyond him, he set out across the highway on a course which as he indicated it on the plan was approximately ten degrees southerly of a right angle to the highway. He testified that he recalled nothing further until after the collision. On cross-examination however he testified that when he started across he could see nothing either way, that he did not look to the north again after he started, that he never saw the lights of the defendant's automobile, heard no horn, and did not hear the noise of any car approaching.

The defendant testified that he stopped at the stop sign before entering the main highway, watched the northbound vehicles go by, and then proceeded southerly, reaching a maximum speed of fifteen miles an hour before he saw the plaintiff. The plaintiff was approximately midway of the southbound lane about fifteen feet ahead. The defendant swerved to his right, sounded the horn, and applied the brakes. The plaintiff then "suddenly appeared on my side window and he walked right in the side of my car when I went by." While the defendant testified that at fifteen miles an hour he could stop his automobile in twenty-five feet, the evidence indicated that he brought it to a stop off the highway ninety-five to one hundred feet beyond the point indicated by him as the point of collision. After stopping, the defendant returned on foot to find the plaintiff seated on the westerly edge of the concrete, his feet on the shoulder. The plaintiff had suffered injuries to his right arm, and the defendant's left door handle was found on the edge of the concrete ten feet beyond the point of collision.

The motions for a nonsuit and a directed verdict were properly denied. A finding that the defendant was negligent was clearly warranted by the evidence that he failed to see the plaintiff until within

fifteen feet of him. Admittedly he had an unobstructed view of the highway which proceeded straight before him for more than 470 feet to where the plaintiff crossed. He testified that his headlights illuminated the road for a distance of two hundred feet ahead. There was a street light on the westerly side of the highway a hundred odd feet beyond where the plaintiff crossed. To what extent, if any, the plaintiff's visibility was affected by the dark clothing or the "glare" of the street light to which the defendant testified was a question for the jury.

In charging the jury the Trial Court submitted without exception the issue of the defendant's excessive speed, and of his alleged failure to comply with the statutory requirement that he slow down and give timely signal. R. L., c. 119, s. 22. We cannot agree that submission of these issues was improper, or so surprising that the defendant should be permitted to question it for the first time in this court. Whether the defendant's failure to bring his automobile to a stop short of ninety-five or one hundred feet beyond the point of collision was due, as he claimed, to the presence of wooden horses which prevented him from parking off the highway, or the result of such speed as to prevent him from making a quicker stop, was for the jury to determine. It was not required to accept the defendant's explanation. *Bourque* v. *Strusa*, 92 N. H. 94. Furthermore, if the jury believed the plaintiff's testimony that the defendant's automobile could not be seen when the northbound trucks were two hundred feet beyond him, it could find that the defendant must have been travelling at a speed of more than thirty-five miles an hour in order to arrive at the point of collision when the plaintiff did.

The jury could find that the defendant neither slowed down on approaching the plaintiff, nor sounded his horn. The plaintiff testified that he heard no horn, and there was nothing to indicate that he would not have heard it had it been sounded within fifteen feet of him.

Exceptions are required to be taken during the course of a trial not only that questions of law may be saved for review in this court, but also that the Trial Court may be appraised of the claims of the objecting party, and correct any apparent errors. See *Bennett* v. *Larose*, 82 N. H. 443, 446; *Merchant's Mutual Cas. Co.* v. *Smith*, 91 N. H. 204, 208; *Public Service Co.* v. *Chancey*, 94 N. H. 259. No reason to depart from the usual rule is apparent in this case.

While there was substantial evidence upon which the plaintiff could have been found contributorily negligent, the contrary finding

of the jury cannot be held untenable, nor is the plaintiff to be held negligent as a matter of law because of his testimony on cross-examination that he did not look to the north a second time after he started to cross the highway. On direct examination he testified: "After I looked both ways [before starting across] I don't remember a single thing." He also testified that his first recollection of subsequent events was when the defendant spoke to him after the accident, and that he was previously unconscious. Cf. *Putnam* v. *Bowman*, 89 N. H. 200, 204. On more than one occasion he explained that he looked both ways before crossing, waited until the northbound trucks were two hundred feet away, and suggested: "[I]n two hundred feet I had a chance to walk across. I thought I was safe."

The doctrine of *Harlow* v. *Leclair*, 82 N. H. 506, cannot be invoked where the testimony of the party is inconsistent or conflicting. *Id.*, 512; *Maltais* v. *Company*, 86 N. H. 211, 213; *Feuerstein* v. *Grady*, 86 N. H. 406, 409. It was for the jury to decide whether the plaintiff did or did not recall his actions after he left the side of the road, and if he did, whether he was negligent. The burden of proof was on the defendant. A finding that the plaintiff saw the defendant's automobile was not required. If the jury believed that he did not, a finding of negligence was not compelled. In *McCarthy* v. *Souther*, 83 N. H. 29, the plaintiff was held not to be negligent as a matter of law in crossing a Manchester street thirty feet in width, without a second look, knowing that an automobile was approaching at a distance of more than two hundred feet. While some allowance may be made for the probability that traffic on the Daniel Webster Highway today is heavier and moves at a swifter pace than it did on Second Street in Manchester in 1923, yet the decision is not without value as a precedent. *Carlin* v. *Drake*, 89 N. H. 52. Now as then, the plaintiff is entitled to rely upon careful driving towards him. *McCarthy* v. *Souther, supra*, 31. Circumstances may be such, however, that he may not be justified in relying exclusively upon the defendant's watchfulness. *Jackson* v. *Smart*, 89 N. H. 174, 176. Yet this is not a case like *Green* v. *Bond*, 93 N. H. 144, where the decedent undertook to thread his way through heavy traffic in disregard of it.

It was for the jury to say what reasonable care required of the plaintiff under the circumstances disclosed by the evidence and the view in this case. The plaintiff conceded that when the trucks were two hundred feet to the north, they obstructed his view of South Main Street. It could be found however that he was not aware of this at the time of the accident, but discovered it by observations made

afterward. Likewise it could be found that he was mistaken in his estimate of the distance that the trucks had travelled beyond him when he started to cross. The defendant contends that his automobile could not have been more than one hundred thirty-five feet away when the plaintiff started across. The jury could find that it was then obscured from view by the trucks rather than when it was over two hundred feet away. The evidence thus warranted a finding that the plaintiff "failed to appraise the situation properly." *Mac-Kelvie* v. *Rice*, 92 N. H. 465, 467. It was for the jury to say whether the plaintiff miscalculated, and if so whether he was negligent in doing so. *Ib.*

The defendant has vigorously attacked the testimony of one of the plaintiff's medical witnesses, charging that it was incompetent, incredible, and cause for setting aside the verdict. The argument is founded upon no particular exception to the testimony, which proceeded for the most part without exception. The physician testified that the accident accounted for a prostate operation which the plaintiff underwent the month following the accident, for a hernia which was first discovered better than a year after the accident, and for the plaintiff's loss of memory, headaches, and dizziness, which the witness attributed to brain injury or a concussion suffered in the accident. While his testimony was in part based upon hypothetical questions and not personal knowledge, and while his opinion was at variance in a number of respects with that of a physician called by the defendant, it was not for that reason incompetent, nor incredible as a matter of law. Nor was it so obviously improbable or preposterous, as to require that the verdict be set aside. The charge to the jury reviewed the particular injuries claimed by the plaintiff to have resulted from the accident, and by repetition strongly emphasized the instruction that the plaintiff could not recover for any disability which did not result from, or was not caused by the accident. The defendant's comment upon the partisan nature of the expert testimony reflects a problem which is not novel. See *White* v. *Schrafft*, 94 N. H. 467, 471; Morgan, Foreword, A. L. I., Model Code of Evidence 34-36. Nevertheless the medical testimony presented conflicts which the jury was required to pass upon. We find no reason to hold that the testimony of the defendant's expert was erroneously received, or that the issues were improperly submitted to the jury.

While the defendant took no exceptions to the charge to the jury, he excepted to the denial of certain of his requests for instructions, some of which have been discussed in brief and argument. For the

most part those upon which the defendant relies were adequately covered by the instructions given. Portions of some were given almost *verbatim*, others in the language of the Presiding Justice. The thirteenth request was one of the latter. It read as follows: "13. You are not allowed to guess or speculate as to the injuries caused to Mr. Colburn as a result of this accident. The plaintiff must convince you, by a balance of the probabilities, that his present physical condition arose as a result of this accident, and if the plaintiff does not so convince you, you are not to award any damages for pain or suffering, or inability to earn, or medical or hospital expenses, which were not caused by this accident." The first sentence was not incorporated in the charge, but as has been pointed out, the point of the second sentence was forcefully made in the charge by means of frequent repetition. The sixth request, which dealt with the plaintiff's testimony that he did not remember, sought the instruction that "absence of recollection . . . is of no probative value and cannot be considered as any evidence that he did so look, and you are to disregard any speculation or conjecture that [he] ever looked north again." The jury was instructed that the plaintiff's testimony that he had no memory "is not to be taken by you as evidence that he did look again . . . nor is it to be taken . . . as evidence that he failed to look again. . . ." The circumstance that the instructions given amplified a part of the sixth request, but omitted the language of "speculation and conjecture," employed in both of these requests does not appear to us to constitute reversible error.

Other requests sought an application to particular evidence of principles of law which were embodied in the charge, or would have required decision of the case upon selected evidence. There was no abuse of discretion in denying them. *Dane* v. *MacGregor*, 94 N. H. 294, 299; *Lynch* v. *Sprague*, 95 N. H. 485, 490. The ninth request, if granted would have directed a verdict for the defendant because of the plaintiff's testimony that he failed to look north a second time after starting across the highway. For reasons already indicated, it was properly denied.

Denial of the motion to set aside the verdict implied a finding that the trial was fair. *Amundsen* v. *Company*, *ante*, 85. The motion presented no ground not already considered, except the allegation that the verdict was excessive, and that the brevity of the jury's deliberations established inadequate consideration of the issues. Neither ground has been argued before us. Since the medical testimony was properly received, the verdict cannot be held excessive as

a matter of law. It was not a compelled finding that the jurors did not follow the instructions of the Court or that they failed to deliberate properly. *Interstate Bridge Authority* v. *Ham Estate*, 92 N. H. 277. There was no error in the denial of the motion to set the verdict aside.

*Judgment on the verdict.*

All concurred.